UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PHYLLIS ARMSTRONG, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 05-0075 (JDB) |
| ALPHONSO R. JACKSON,<br>Secretary, Housing and Urban Development, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

     Plaintiff, an African American woman employed as a public trust officer with the U.S. Department of Housing and Urban Development (HUD), brings this action against defendant Alphonso R. Jackson, Secretary of HUD, alleging that defendant discriminated against her by refusing to hire her based on her race, sex, and age.  Plaintiff seeks damages pursuant to Title VII, 42 U.S.C. § 2000e-2(a) (Count I), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 (Count II).  Defendant has moved for summary judgment based on plaintiff's alleged failure to exhaust administrative remedies under § 2000e-2(a) and § 621, and failure to carry her prima facie case burden for race, sex, or age discrimination.  For the reasons explained below, the Court will grant defendant's motion for summary judgment in part and deny it in part.

## BACKGROUND

     Plaintiff is an African American female who was born on January 16, 1946.  See Pl.'s Opp'n at 2.  She was employed from September 1999 until January 2005 as a public trust officer at HUD, which included work on a task force overseeing government-sponsored enterprises (GSEs).  See id. at 2-3; see also Def.'s Stmt. at ¶ 1.  In May 2002, HUD advertised one vacancy

for a GS-14 Senior Compliance Specialist, a position subordinate to Ms. Sandra Fostek (the Director of GSE Oversight in the Office of Housing) in an office with a small staff of less than five.  See Pl.'s Opp'n at 3; see also Def.'s Stmt. at ¶ 6; Def.'s Mem. Supp. at 8.  Plaintiff applied for the position in June 2002 under both the internal announcement (which only considered federal employees) and the external announcement (which considered all applicants).  See Pl.'s Opp'n at 4; see also Def.'s Stmt. at ¶ 8.  Three other individuals applied under the external announcement: Ms. Stacy Riggin-Stephen, a 34-year-old Caucasian female; Ms. Suzanne McQueen, a 56-year-old Caucasian female; and Mr. Michael Nixon, a 40-year-old Caucasian male.  See Pl.'s Opp'n at 4; see also Def.'s Stmt. at ¶ 10.

   Fostek personally interviewed all candidates, including Mr. James Austin, an African American male who applied under the internal announcement.  See Pl.'s Opp'n at 4; see also Def.'s Stmt. at ¶ 11.  Based on the strength of their applications and interview performance, Fostek received permission to extend offers to all three external applicants.  See Def.'s Stmt. at ¶ 12.  Ultimately, HUD did not actually offer a position to Riggin-Stephen, however, because she was unable to begin by the required date.  See Def.'s Stmt. at ¶ 12.  Fostek did not thereafter offer the position that had been created for Riggin-Stephen to plaintiff.  See Pl.'s Opp'n at 5; see also Def.'s Stmt. at ¶ 12.  McQueen and Nixon were recommended for hire on July 30, 2002, and offers of employment were formally extended on August 14, 2002.  See Def.'s Mem. Supp. at 7.

   On October 9, 2002, plaintiff received an e-mail from Fostek announcing the additions of McQueen and Nixon to the GSE regulatory staff.  See Def.'s Stmt. at ¶ 21.  Specifically, the communication stated that Fostek was "pleased to introduce two new staff members to the GSE regulatory staff, Suzanne McQueen and Michael Nixon.  Please add their names to your e-mail and routing mail lists."  Def.'s Ex. 13 (emphasis in original).  Fostek then briefly outlined

2

McQueen and Nixon's professional backgrounds, but did not mention the specific capacities in which they would be employed at HUD (beyond the general statement that they would be "GSE regulatory staff").  Id.  The e-mail also did not mention the GS-14 Senior Compliance Specialist position.  When plaintiff received the e-mail, her "first inclination" was that McQueen and Nixon had been "chosen for her job."  Def.'s Exh. 2 at 102: 12-20.  She then contacted HUD's Human Resources Department to inquire as to the status of her application for the GS-14 Senior Compliance Specialist position.  See Pl.'s Opp'n at 10.  Human Resources ignored plaintiff's e-mail for more than five months, finally informing her on March 12, 2003 that McQueen and Nixon had been hired to fill the vacancy.  See id.; see also Def.'s Ex. 14.  Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor regarding her claims of discrimination on April 24, 2003, and filed her formal administrative complaint on May 16, 2003.  See Def.'s Stmt. at ¶ 24.

## LEGAL STANDARD

### I.     Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating that no genuine dispute of material fact exists.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Id. (quoting Fed. R. Civ. P. 56(c)).

To determine whether there is a genuine issue of material fact sufficient to preclude summary judgment, a court must regard the non-moving party's statements as true, and further accept all evidence and make all inferences in the non-moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Nevertheless, a non-moving party must establish more than the "mere existence of a scintilla of evidence" in support of its position, id. at 252, although the moving party need only point to the absence of evidence proffered by the non-moving party, Celotex, 477 U.S. at 322. Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

## II.     Substantive Legal Framework

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), establishes the burden of proof for Title VII employment discrimination cases and ADEA claims in which the plaintiff lacks direct evidence of discrimination. See Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004) (citing Hall v. Giant Food, Inc., 175 F.3d 1074, 1077 (D.C. Cir. 1999)); see also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308 (1996). Under this framework, the plaintiff has the burden of establishing a prima facie case of discrimination or retaliation by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802; see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or non-retaliatory reason for its actions. McDonnell Douglas, 411 U.S. at 802. The employer's burden, however, is merely one of production. Burdine, 450 U.S. at 254-55. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the

defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id.

If the employer successfully articulates a nondiscriminatory or non-retaliatory basis for its actions, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination or retaliation. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). The plaintiff may attempt to establish that she was the victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence." Id. (quoting Burdine, 450 U.S. at 256). But "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination." Id. at 147. Thus, the trier of fact may also "consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Id. (quoting Burdine, 450 U.S. at 255 n.10). As the Reeves Court explained:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors . . . includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

Id. at 148-49.

Thus, if the employer meets its burden of proffering a nondiscriminatory impetus for its actions, then trial or summary judgment proceedings will center on whether a jury could infer discrimination from the following composite of evidence: (1) the plaintiff's prima facie case; (2) any evidence presented by the plaintiff to undercut the employer's proffered non-discriminatory impetus; (3) any other evidence of discrimination available to the plaintiff, including independent evidence of the employer's discriminatory statements or attitudes; and (4) any contrary evidence

available to the employer, including evidence that the employer has a pattern of taking seriously its responsibilities of equal opportunity employment. Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc); see also Waterhouse v. District of Columbia, 298 F.3d 989, 992-93 (D.C. Cir. 2002).

Although the "intermediate evidentiary burdens shift back and forth" under the McDonnell Douglas framework, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 253).  Once the defendant has proffered a legitimate nondiscriminatory reason for its action, the question then becomes whether that proffered reason is a pretext for discrimination.  At this point, the McDonnell Douglas burden-shifting framework is dissolved.  The sole remaining issue is discrimination vel non, and "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves, 530 U.S. at 142-43. Examination of that issue in this setting therefore requires consideration of all the relevant circumstances in evidence, including the strength of the prima facie case, any direct evidence of discrimination, any circumstantial evidence that defendant's proffered explanation is false (which, in conjunction with the prima facie case, may be sufficient to infer unlawful discrimination), and any properly-considered evidence supporting the employer's case. Reeves, 530 U.S. at 147-48; see also Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004); Lathram, 336 F.3d at 1089; Waterhouse, 298 F.3d at 993; Aka 156 F.3d at 1290.

## ANALYSIS

**I.      Exhaustion of Administrative Remedies**[1]

In order to bring a claim under § 2000e-2(a) in federal district court, the aggrieved employee must seek EEO counseling within 45 days of the alleged discriminatory act.  See 29 C.F.R. § 1614.105(a)(1).[2]  Once an employee has done so, further procedural requirements apply, governed by 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).  Normally, if a plaintiff has waited more than 45 days to seek EEO counseling, she cannot bring the claim in federal district court.  The Court may, however, equitably toll the 45-day deadline under both Title VII and the ADEA if plaintiff "did not know and reasonably should not have known" that the discriminatory personnel action had occurred.  See Silver, 2006 WL 626928, at *8 (quoting 29 C.F.R. § 1614.105(a)(2)); see also Stewart v. Ashcroft, 352 F.3d 422, 425 (D.C. Cir. 2003).

Here, the alleged discriminatory act – the hiring of McQueen and Nixon, and the corresponding failure to hire plaintiff – occurred on August 14, 2002.  See Def.'s Stmt. ¶ 12; see also 29 C.F.R. § 1614.105(a)(1) (stating that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action"); Silver, 2006 WL 626928, at *7 (noting that "the EEOC regulations state that the relevant date [of discrimination] is the date

---

[1] Here, there is no dispute that plaintiff met the procedural requirements once she initially contacted the EEO in April 2003.  The issue, then, centers on whether plaintiff's April 2003 contact with the EEO was timely in light of the fact that the alleged discriminatory act – the failure to hire plaintiff – occurred in August 2002, more than 45 days earlier.

[2] Similarly, any claims under § 621 are governed by 29 C.F.R. § 1614.105(a)(1), which requires that an EEO counselor be contacted no later than "45 days from the alleged discriminatory act, or in the case of a personnel action, within 45 days of its effective date."  Silver v. Leavitt, 2006 WL 626928, at *6 (D.D.C. March 13, 2006).

on which the personnel action (here, the decision not to hire plaintiff) became effective"). Plaintiff did not contact an EEO counselor until April 24, 2003, more than eight months after the discriminatory act and well outside the 45-day requirement mandated by the statute.  See Def.'s Stmt. ¶ 24.

As defendant notes, this Circuit employs a reasonable suspicion standard when determining whether to toll the limitations period.  See 29 C.F.R. § 1614.105(a)(2) (stating that "[t]he agency or the Commission shall extend the 45-day time limit [] when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have [been] known that the discriminatory matter or personnel action occurred"); see also Stewart 352 F.3d at 425 (same).  Hence, the issue here is whether the e-mail plaintiff received from Fostek on October 9 was sufficient to raise a reasonable suspicion that McQueen and Nixon had been hired instead of plaintiff.  Defendant answers in the affirmative, relying on plaintiff's deposition testimony, during which she stated that she had "full information" when she received Fostek's e-mail on October 9, 2002.  Def.'s Ex. 2 (Armstrong Dep. at 102: 5-10).  Moreover, defendant claims that plaintiff was aware that the GSE staff consisted of less than five employees.  From this, it allegedly follows that plaintiff must have known that McQueen and Nixon had been hired as senior compliance specialists.  See Def.'s Mem. Supp. at 8.  According to defendant, then, the Court may only toll the deadline from August 2002 through October 9, 2002, and plaintiff's subsequent contact with the EEO counselor is untimely.  See Def.'s Mem. Supp. at 7-8.

A closer look at the record, however, reveals that the analysis is not quite as straightforward as defendant suggests.  To begin with, Fostek's e-mail only stated that McQueen

and Nixon had joined the GSE regulatory staff, without identifying the capacity in which they were hired.  See Def.'s Ex. 13.  The e-mail did not mention the GS-14 Senior Compliance Specialist position, and as far as plaintiff knew, there was only one vacancy, to be filled by a single individual.  See Pl.'s Opp'n at 14.  In fact, when plaintiff received the e-mail on October 9, 2002, she had never previously been given reason to believe that a selection had been made.  And once she received Fostek's e-mail, plaintiff immediately inquired as to whether the GS-14 Senior Compliance Specialist position had been filled.  Defendant, however, let plaintiff's inquiry languish for more than five months before finally informing her that McQueen and Nixon had been hired in that capacity.  See Pl.'s Opp'n at 10.  Although plaintiff did state (in response to defense counsel's questioning under pressure at her deposition) that the e-mail provided her with "full information," she also claimed that the e-mail was insufficient because it failed to link the employment of McQueen and Nixon to the position for which she applied.  Def.'s Ex. 2 (Armstrong Dep. at 102: 5-10, 12-20).

Accordingly, there remains a genuine issue regarding whether it would be reasonable to conclude that plaintiff suspected or should have suspected, based only on Fostek's e-mail, that she had been discriminated against.  A reasonable jury could find that she was not aware – and should not have been aware – of the alleged discriminatory act until March 2003, when the Human Resources Department finally responded to her inquiry regarding selection for the position she sought.  Based on the present record, then, defendant is not entitled to summary judgment on the exhaustion issue.

**II.     Gender and Race Discrimination**

To make a prima facie case for gender or race discrimination under § 2000e-2(a), "the plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination," as when the applicant is passed over for a position that she is qualified for in favor of another applicant who is not a member of the protected class.  Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006) (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)). Plaintiff has established that, as an African American, she is a member of a protected racial class. Because she is female, she is likewise a member of a protected sex class.  See Pl.'s Compl. ¶ 5. However, her failure to satisfy the second and third elements of the prima facie case standard warrants the entry of summary judgment in defendant's favor.

Plaintiff alleges that defendant unlawfully discriminated against her on the basis of her race and sex when Fostek failed to hire her as a senior compliance specialist.  Defendant responds that plaintiff cannot show that she suffered an adverse employment action because the position she sought was nothing more than a lateral transfer -- it offered no potential for an increased salary or benefits, and no tangible change in the terms, privileges, or conditions of employment.  Furthermore, defendant contends that even if plaintiff's non-selection for this lateral transfer did rise to the level of a legally-cognizable adverse employment action, she still cannot satisfy the third element of a prima facie case.  In this regard, defendant claims that there is no inference of discrimination possible because plaintiff was not significantly more qualified than any of the selected applicants.  Plaintiff's response is that the differences between the two positions are significant enough to support the classification of her non-selection as an adverse employment action, and that, by virtue of her work experience, she was significantly more

qualified than McQueen, Nixon, and Riggin-Stephen.

The D.C. Circuit has clearly stated that, in the context of discrimination claims based on disparate treatment,

> [a] plaintiff who is . . . denied a lateral transfer -that is, one in which she suffers no diminution in pay or benefits - does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncrasies are not sufficient to state an injury.

Stewart 352 F.3d at 426 (citing Brown, 199 F.3d at 457); see also Mungin v. Katten, Munchin & Zavis, 116 F.3d 1549, 1556-1557 (D.C. Cir. 1997) (holding that "[p]erhaps in recognition of the judicial micromanagement of business practices that would result if we ruled otherwise . . . changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes"); cf. Jones v. District of Columbia Dept. Of Corrects., 429 F.3d 276, 281 (D.C. Cir. 2005) (noting that, in connection with a claim of retaliation discrimination, "[t]he clear trend of authority . . . . is to hold that a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action") (citing Brown 199 F.3d at 455-56).

It does not follow, however, that a lateral transfer may <u>never</u> constitute an actionable adverse employment action. See Stewart, 352 F.3d at 426-27. The key inquiry is whether the plaintiff is negatively affected, not the type of action taken by the employer. See id.; see also Tsehaye v. William C. Smith & Co., Inc., 402 F. Supp. 2d 185, 193 (D.D.C. 2005) (quoting Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002)); cf. Holcomb v. Powell, 433 F.3d 889,

11

902 (D.C. Cir. 2006) (stating that, in connection with a claim for retaliation discrimination, "'purely subjective injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions, [but] the threshold is met when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm'") (internal citations omitted).

Plaintiff's essential failure is that she has not identified anything objective or tangible to support her contention that she suffered an adverse employment action. Rather, it appears that she merely prefers the senior compliance specialist position. For example, plaintiff asserts that the "[senior compliance specialist] position carried significantly greater responsibility than [her current] position" because it involved the "oversight of two GSEs which have received widespread media attention for $15 billion in accounting irregularities." See Pl.'s Opp'n at 8-9. The entities referred to are Fannie Mae and Freddie Mac. According to plaintiff's own application for the senior compliance specialist position, however, overseeing these two entities has been a function of her current position as well. See Def.'s Ex. 1. Indeed, the positions are virtually identical in terms of responsibilities and professional tasks -- they both generally focus on the enforcement of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992 ("FHEFSSA"), involve budget analysis and defense duties, and require public relations work. Compare Def.'s Ex. 1 at 1 (Armstrong's Application for Senior Compliance Specialist Position) with Def.'s Ex. 4 at 2 (Vacancy Announcement).

As defendant highlights, there is no dispute that the two positions also carry an identical pay grade and indistinguishable benefits. Def.'s Mem. Supp. 11 (citing Pl. Dep. at 45: 15-21;

Def.'s Ex. 4 at 1; Def.'s Ex. 8 at 1). Moreover, there is no identifiable difference regarding the likelihood of promotion or possibility for a subsequent increase in salary or benefits. See Def.'s Mem. Supp. at 12 (citing Pl. Dep. at 45: 15-21; Def.'s Ex. 4 at 1; Def.'s Ex. 8 at 1); see also Pl.'s Opp'n at 17. The Court concludes that the position plaintiff sought would be a lateral transfer with no effect on the "terms, conditions, or privileges of employment, " and therefore plaintiff did not suffer an adverse employment action when denied the position.

But even if plaintiff had suffered an adverse employment action, she still would be unable to prevail because she has not established an inference of discrimination. Under the McDonnell Douglas framework, an inference of discrimination is created if the plaintiff is "significantly better qualified for the job" than the less qualified candidate selected by the defendant. See Aka 156 F.3d at 1294; see also Holbrook, 196 F.3d at 261 (stating that an inference of discrimination arises from evidence demonstrating that similarly-situated persons outside of the protected class were treated more favorably). Plaintiff alleges that she is significantly more qualified than the three candidates who were hired as senior compliance specialists, see Pl.'s Opp'n at 21, but for the reasons discussed below in connection with the legitimate, non-discriminatory justification proffered by defendant, the record proves otherwise.

Accordingly, plaintiff has failed to the prima facie case requirements for sex and race discrimination. Hence, summary judgment will be granted in defendant's favor with respect to Count I.

### III.   Age Discrimination

The prima facie case for an age discrimination claim under § 621 is similar to that for

13

discrimination under § 2000e-2(a).  See Silver 2006 WL 626928, at *5.  Specifically, plaintiff is required to establish that she is older than 40 years of age, and to present evidence that she has suffered an adverse employment action that is not attributable to a reasonable factor other than age.  Id at 14.  Having been born in 1946, plaintiff is a member of the requisite protected class in this context.  See Pl.'s Compl. ¶ 5.  However, for the reasons discussed more fully above in connection with plaintiff's § 2000e-2(a) claim, plaintiff cannot show that she suffered an adverse employment action.  Moreover, for the reasons discussed below, she cannot show an inference of discrimination arising from her non-selection.  Accordingly, plaintiff cannot make a prima facie case of age discrimination under § 621, and defendant's motion for summary judgment must be granted with respect to Claim II.

### IV.     The Legitimate, Non-Discriminatory Justification Proffered by Defendant

Even if plaintiff had carried her prima facie case burdens, she would still be unable to prevail under McDonnell Douglas.  Defendant claims that it selected McQueen, Nixon, and Riggin-Stephen because they were better qualified, performed better in their interviews, and expressed more enthusiasm about the position than plaintiff.  See Def.'s Mem. Supp. at 15, 17. An employer's judgment that is based on an assessment of the applicant's  professional qualifications constitutes a legitimate, non-discriminatory justification.  See Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 358 n. 44 (1977); see also Crockett v. Abraham, 284 F.3d 131, 133 (D.C. Cir. 2002); Aka 156 F.3d at 1294.  Because defendant has proffered a legitimate explanation for the selection decision, then, plaintiff can only survive summary judgment if she shows that "a reasonable jury could conclude from all the evidence" that her non-selection was actually due to a different, discriminatory impetus.  See Holcomb 433 F.3d 889,

896-97 (D.C. Cir. 2006) (quoting Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003)).  In this regard, plaintiff argues that she was actually better qualified than any of the three selectees, and that it was improper for Fostek to consider interview performance and enthusiasm when deciding which applicants to hire.

It is well-settled that plaintiff may not overcome a legitimate exercise of defendant's non-discriminatory business judgment regarding an applicant simply by showing that she may be equally, or slightly more, qualified.  See Holcomb 433 F.3d at 897.  "'In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of its candidates, or that the employer simply made a judgment call.'"  Id. (quoting Aka 156 F.3d at 1294).  "[C]ourts are not 'super-personnel department[s] that reexamine[ ] an entity's business decision[s;]' [rather], we defer to the [defendant's] decision of what nondiscriminatory qualities it will seek in filling the [position]."  Stewart 352 F.3d at 429-30 (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)).  Hence, plaintiff must show that she is significantly better qualified for the position than at least one of the three selectees.  See Aka 156 F.3d at 1294 (stating that "[i]f a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate -- something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture").

Here, however, plaintiff's credentials consist only of an undergraduate degree and professional experience in banking and real estate, including her employment with HUD.  See

15

Pl.'s Opp'n at 21. This is unexceptional because, like plaintiff, each of the three selectees also holds an undergraduate degree. Indeed, Riggin-Stephen and McQueen have obtained a master's and law degree, respectively, and Nixon has completed additional coursework in finance. It is thus far from clear that plaintiff is either equally or significantly better qualified than any of the selectees with respect to education. Even assuming that her work experience with HUD placed her on par or slightly above one of the others, the disparity hardly constitutes the gulf that is normally required. See Aka 156 F.3d at 1294; see also Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997). To be sure, all of the selectees have relevant professional experience -- Nixon has previously worked specifically with GSEs; Riggin-Stephen has previously worked in a bank and a law firm; and McQueen has relevant legal and regulatory experience. See Def.'s Mem. Supp. at 16; Def.'s Reply at 13. This Court is ill-equipped to say that any of these professional experiences are far exceeded by that of plaintiff. "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer." Combs, 106 F.3d at 1543.

Contrary to plaintiff's assertions, the fact that Fostek considered interview performance does not show that the proffered justification is a pretext for a discriminatory animus. Fostek personally interviewed each candidate and recalls that "[p]laintiff's responses to questions during the interview were 'relatively brief and lacked any particular enthusiasm for the duties of the advertised position or the responsibilities of the office." Def.'s Mem. Supp. at 17. The law does not foreclose a prospective employer from considering the less tangible attributes of candidates drawn from the applicant pool unless they are considered in a discriminatory fashion. Here, there

is no evidence that Fostek inflated the interview performance of the others, downplayed plaintiff's interview performance, or only considered the interview performance of certain applicants. It is not uncommon for interview performance to be used as a means of distinguishing candidates. Indeed, interviewing is a commonly-employed practice, and it would be nonsensical for employers to spend time and effort pursuing it if interview results could play no part in the evaluative process. The record shows that Fostek considered each applicant's interview performance as well as their overall mix of tangible qualifications, and determined that plaintiff was not as qualified as McQueen, Nixon, and Riggin-Stephen. The record contains no evidence that would lead the Court to question the integrity of Fostek's decision-making process in this regard. Hence, no reasonable jury could find that plaintiff is significantly better qualified than any of the three selectees, and summary judgment will be granted in favor of defendant on all counts.[3]

## CONCLUSION

Although plaintiff's claims are not time-barred, she has nonetheless failed to show that defendant's decision not to hire her for the GS-14 Senior Compliance Specialist vacancy rises to the level of a legally cognizable adverse employment action. Moreover, plaintiff has not shown that defendant's proffered legitimate, nondiscriminatory reason for the decision is a pretext for

---

[3] The Court notes that plaintiff's assertion that Fostek called her "bitter" and said that "the negative things people say about [plaintiff are] true" does not warrant a contrary conclusion. Pl.'s Opp'n 20. At best, those statements illustrate only a personal dislike, not a discriminatory animus. See Aka 156 F.3d at 1290 (stating that "[w]e ourselves do not read [St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993),] to say that a plaintiff who creates a genuine issue of material fact as to whether the employer has given the real reason for its employment decision will always be deemed to have presented enough evidence to survive summary judgment. Instead, the court must consider . . . . whether the plaintiff has met his burden of showing that a reasonable jury could conclude that he had suffered discrimination.") (emphasis in original).

discrimination, or that the record supports an inference of discrimination.  Accordingly, summary judgment will be entered in favor of defendant.  A separate order has been posted on this date.

/s/  John D. Bates
JOHN D. BATES
United States District Judge

Dated:    July 17, 2006


Copies to:

David A. Branch
LAW OFFICE OF DAVID A. BRANCH
1825 Connecticut Avenue, NW
Washington, DC 20009
(202) 785-2805
Fax: (202) 785-0289
Email: dablaw@erols.com
      Counsel for plaintiff


Kathleen M. Konopka
U.S. ATTORNEY'S OFFICE
Civil Division
555 Fourth Street, NW
Washington, DC 20530
(202) 616-5309
Fax: (202) 514-8781
Email: kathleen.konopka3@usdoj.gov

Claire M. Whitaker
UNITED STATES ATTORNEY'S OFFICE
555 4th Street, NW
Suite E-4204
Washington, DC 20816

(202) 514-7137
Fax: (202) 514-8780
Email: claire.whitaker@usdoj.gov
    *Counsel for defendant*